Opinion ?y
 

 Cunningham, J.,
 

 Appellant was convicted in the court below upon each of two indictments charging him with having committed sodomy with Joseph Quigley, eleven years of age. In the indictment at No. 71, December Sessions, 1939, the offense was charged as having been committed on September 3.0th of that year, and in the indictment at No.
 
 *566
 
 72, December Sessions, 1939, the date laid was October 4, 1939. Both indictments were found December 11, 1939. If the testimony of Joseph Quigley is credible, there is evidence upon the record that the defendant on some unspecified date prior to the finding of the indictments and within the statutory period of limitation committed the offense charged in the indictment at No. 72, (Section 501 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §4501) and attempted to commit the crime described in the indictment at No. 71, (Section 502, 18 PS §4502). But one sentence, a nominal fine, costs and imprisonment in the county jail for not less than 1% years nor more than 3 years, was imposed; it was pronounced at No. 71 and sentence was suspended at No. 72, upon payment of costs. The court below directed that defendant’s appeals from these sentences should operate in each case as a supersedeas.
 

 Twenty assignments of error have been filed. Those in the first group are based upon the contention of counsel for defendant that as the Commonwealth failed to prove the commission of the crimes by defendant on the dates laid in the indictments, or any other definite date or dates within the statutory period, the case should not have been submitted to the jury. These assignments raise the fundamental question involved upon these appeals.
 

 As supplying a background for the case, there was ample evidence that the conduct of the defendant during the summer and fall of 1939, in hailing children along the streets in the vicinity of Turner Hall and St. John’s Church, on the South 'Side of the City of Pittsburgh, and inviting them to take rides in his automobile, became so suspicious as to attract the attention of 'Father McKavney and the teachers in, charge of the schools they attended. The license number of his automobile was noted and the matter referred to the police department. There was evidence that defendant was
 
 *567
 
 known to the children as “Jay,” “Joe,” or “Jack,” and that his first contact with Joseph Quigley was on an occasion when the boy was standing along the street with his sister, Gertrude Quigley, sixteen years of age, Josephine Dawida, fourteen, and Eleanor Obradowski, eleven. The defendant upon several occasions took this group of children, or some of them, for a ride in his car and gave them small sums of money with which to buy sodas and candy. Joseph Quigley testified' to three occasions upon which he was in the car alone with the defendant after dark. According to the story of the boy, the defendant took him each time to a driveway in the rear of Goldenson’s furniture store. Upon the first occasion the defendant’s conduct amounted to no more than an indecent assault; upon the second, the crime charged in the indictment at No. 72 was committed, and on the following evening the offense set forth in the indictment at No. 71 was attempted. It was also testified that the children when called to the police station were separately shown a group of photographs and each picked out the picture of defendant as that of the man who had taken them for rides in his automobile, and that in a “stand-up” at the police station in which three men were placed in a line with defendant, each child identified him as the person known to them as “Jay.” The ear bearing the license number obtained by a janitor at the school was registered in defendant’s name.
 

 The testimony both with reference to the date upon which Joseph Quigley first met the defendant and the dates upon which he was alone with him in his car in the driveway is in the utmost confusion.
 

 We are unable to find any satisfactory evidence upon the record fixing the date upon which the defendant attempted to have Joseph Quigley commit sodomy upon him, as charged in the indictment at No. 71. If that date could be fixed, the date of the completed offense
 
 *568
 
 by defendant upon the boy, as charged in the indictment at No. 72, would also be fixed because under the testimony a period of only twenty-four hours intervened between these occurrences. The testimony of Joseph Quigley was that the completed offense charged at No. 72 was committed between 7 and 8 o’clock p.m. on some date in August or September, 1939, while they were parked in the driveway, and that the attempt to commit the offense charged at No. 71 occurred at the same place, on the following evening. Only one date was fixed with any degree of certainty and that was the birthday of Gertrude Quigley — 'September 4th. Another date fixed with reasonable certainty was the day upon which school began that fall — September 6th. At page 21a of the record1, Joseph Quigley, referring to the offense charged in the indictment at No. 72, fixed the time as a week before his sister’s birthday and said defendant gave him a quarter that evening. Upon cross-examination the boy said, at page 47a, the offenses were committed in August, 'but at pages 48a and 50a he testified, “Them two times he took me out was in September. That was in September the two times he took me out.” We are unable to agree with the statement of counsel for the Commonwealth that the boy testified in chief that the offense was committed the next day after school started. The answer, “The next day,” at the top of page 24a, obviously means the next day after the first offense was committed.
 

 An excerpt from his testimony on cross-examination beginning on 49a reads: “Q. Didn’t you say it happened a week before your 'sister’s birthday? A. No, it was in September. Q. Why should you say sure it was in September? A. Because it was close to my sister’s birthday. Q. Now, then, September 4th — were you out with him September 1st? A. Yes, and September 2nd. Q. September 1st and September 2nd. A. September 1st and September 2nd. Q. Those are the dates you were out
 
 *569
 
 with him, is that right? A. Yes. Q. By yourself? A. Yes.”
 

 If this testimony by the Commonwealth’s principal witness stood alone, it might be sufficient to support a finding of the commission of the crimes on September 1st and 2nd. But it does not stand alone.
 

 The boy’s sister, Gertrude Quigley, also a material witness for the Commonwealth, testified that the occasion upon which defendant took the group of children, including her brother Joseph, out in his car for the first time, and which was the
 
 first
 
 time defendant met' her brother, was after her birthday and after school had started, i. e., some time after September 6th. Josephine Dawida, another member of the group, called by the Commonwealth, said defendant took them riding about the end of September. Eleanor Obradowski, the fourth member, said she did not know when it was.
 

 After the Commonwealth had rested the assistant district attorney trying the case moved for and was granted permission to reopen the Commonwealth’s case and amend the date of October 4,1939, laid in the indictment at No. 72, to September 30, 1939, the date set out in the indictment at No. 71.
 

 It is difficult to understand why that amendment was desired. We find no evidence upon the record establishing either September 30th or October 4th as the date of the commission of the crime charged in either indictment, and the positive testimony of Joseph Quigley was that they were committed upon successive evenings.
 

 It may be conceded that in the prosecution of crimes of the kind here involved the Commonwealth is not required to prove their commission on the date laid in the indictment, but, failing in that, we think it has the burden, in order to sustain a conviction, of proving their commission upon some other date, fixed with reasonable certainty and being within the prescribed statutory period — five years in the present case (Act of April
 
 *570
 
 6, 1939, P. L. 17, 19 PS §211) and not two years as assumed by the trial judge.
 

 In other words, where a particular date or day of the week is not tof the essence of the offense, the date laid in the indictment is not controlling, but some other reasonably definite date must be established with sufficient particularity to advise the jury and the defendant of the time the Commonwealth alleges the offense was actually committed, and to enable ihe defendant to know what dates and period of time he must cover if his def ense is an alibi.
 

 “In the laying of time, any date may be fixed within the statutory period, and the averment will be supported by proof that the offense occurred at another date within that time, unless time is an element of the crime charged, as in violation of Sunday laws”: Sadler’s Criminal Procedure in Pennsylvania, (Second Edition, 1937) Sections 232 and 345; Maurer’s Notes on Criminal Law, Vol. I, Date, notes 1151-1165, pages 292-294;
 
 Com. v. Polin,
 
 140 Pa. Superior Ct. 18, 12 A. 2d 798, and cases cited at pages 24 and 25.
 

 We do not understand the rule of the cases to be that the Commonwealth need not prove any date at all, but can sustain a conviction merely by proving that the offense must have been committed upon some unshown date within the statutory period. Our attention has not been called to any case so holding.
 

 Perhaps, the case most favorable to the present contention of the Commonwealth is
 
 Com. v. Grove,
 
 91 Pa. Superior Ct. 553, but the general language there used must be read in connection with the facts of that case. The defendant was charged with having administered drugs with intent to procure a miscarriage and with the use of instruments, with like intent and with fatal results. The only date laid in the indictment was September 6, 1926. The Commonwealth’s case depended upon proof of the victim’s dying declarations. One of
 
 *571
 
 the witnesses testified that in making them she was not positive as to the correctness of the dates which she named; that she thought the drugs were administered to her on September 6th; that she felt that was the date because there had been a carnival at a designated town from which she returned the following “Thursday evening,” and she thought she had gone to the doctor’s office that evening — the occasion upon which the instruments were used. Another witness testified the decedent fixed the time at which the instruments were used as “Thursday, September 9th.” The defendant requested the trial judge to charge there could be no conviction unless the jury found the defendant administered the drugs on “Monday, September 6, 1926” and used the instruments on “Thursday, September 9, 1926.”
 

 In disposing of this contention Poetee, P. J., said: “The testimony of one of the witnesses as to the dying declaration would seem to indicate that the woman was not absolutely certain as to the precise day of the month upon which the offenses were committed, but that she believed she was giving the correct dates; as to the second visit ‘she said she thought it was the following Thursday.’ The Commonwealth is not bound by the date laid in the bill of indictment but can show any date within the statutory period and prior to the finding of the indictment, except in cases where time is of the essence of the offense:
 
 Com. v. Powell,
 
 23 Pa. Superior Ct. 370;
 
 Commonwealth v. Major,
 
 198 Pa. 290. If the jury are satisfied that the witnesses are mistaken as to the particular date mentioned, but are satisfied beyond a reasonable doubt that the offense was committed on some other day
 
 about that time,
 
 that is sufficient so far as the day is material, and will warrant a conviction:
 
 Com. v. Snow,
 
 116 Mass. 47.” (Italics supplied.)
 

 In that case, as in all we have examined, while the date laid in the indictment was not definitely proven, other approximate dates were shown. Here? neither of
 
 *572
 
 the datesi laid in the indictments was proved, nor were any other dates shown with any degree of certainty. See also 23 C. J. S. Section 1196, note 29, p. 747.
 

 The defense here interposed was an absolute contradiction by the defendant of the testimony of Joseph Quigley and of the three girls who corroborated his statements relative to the circumstances of his first meeting with the defendant. In addition, the defendant set up an alibi as to the dates of September 1st and 2d by testifying he was in Steubenville, Ohio, attending dog races on .the evenings of Friday and Saturday, September 1st and 2d. His testimony upon this feature of his defense was corroborated by his wife and several other witnesses.
 

 The third, fourth and fifth assignments are based upon alleged errors in the charge. It is contended that the trial judge instructed the jurors, in effect, that the fact the Commonwealth had failed to prove the commission of any crime by the defendant on the dates laid in the indictments, was entirely immaterial, and that they could convict him if they found he
 
 could have
 
 committed the crimes charged against him
 
 at any time
 
 within the two years preceding the finding of the bills.
 

 The complaint of counsel for the defendant seems to be borne out by these excerpts from the charge: “It is alleged that these offenses happened on two different occasions, or, perhaps, some minutes or time apart — I do not recall exactly; however, it is for you to recall what the testimony was. It is the contention of the Commonwealth that this alleged crime was committed by this defendant in this county, Allegheny County, Pennsylvania, on or about [September 30th], I think the date was, set forth in one of the indictments, the other indictment being amended to the same date, and we say to you, that, so far as the date is concerned, the Commonwealth has the right to prove a crime, if they can, any time within two years, which is the statutory
 
 *573
 
 period.......Now, it seems that the first witness called in this case was Joseph Quigley, who is eleven years of age. He says that he knows the defendant and he tells you the various times he was out in company with others, or near the defendant in company with others, and finally he says to you, as we recall it, that the defendant gave him various amounts of money, and says that some time in September, as we recall his testimony —he is unable to fix the exact date — (We have told you about that, as far as the date is concerned, as far as the Statute of Limitations is concerned, that it may be any time within two years from the commission of the crime.)”
 

 In reviewing the testimony of Gertrude Quigley, the trial judge did not call the attention of the jury to the fact that she testified her brother met the defendant for the first time after school had started on September 6th.
 

 With reference to defendant’s contention that he was elsewhere on September 1st and 2d, the trial judge charged, inter alia: “Of course, if he was not there at any time when this happened, within two years, of course, he would not be guilty of anything; but, if he was there at any time it is alleged this did happen, taking into consideration the age of the children, their mental capacity to remember dates and all, if the Commonwealth has satisfied you beyond a reasonable doubt that he
 
 could have committed
 
 this at another time than the 1st and 2d of September that year, and if you were so satisfied beyond a reasonable doubt, of course, it would be your duty to find the defendant guilty. If not, it would be your duty to find him not guilty.” (Italics supplied.)
 

 A majority of the members of this court think these instructions were so broad as to be prejudicial to the rights of the defendant; under them, the jurors were practically told they were at liberty, if they saw fit, to ignore defendant’s alibi evidence because it did not
 
 *574
 
 cover the entire period of time between his first meeting with the boy and defendant’s arrest. Nowhere in the charge was the jury told the Commonwealth had the duty of establishing with reasonable certainty the dates of the offenses — either those laid in the indictments or some other dates within the statutory period. The failure to give such instructions amounted, in our opinion, to reversible error and unfortunately necessitates a retrial of the cases.
 

 In view of the conclusion we have reached upon this phase of the case, the other assignments need not be considered in detail. It may be advisable, however, to refer to those which allege error in the admission of the testimony of certain witnesses. The sixth, seventh and eighth refer respectively to the admission of the testimony of the three girls who were present when the defendant first met Joseph Quigley — Gertrude Quigley, Josephine Dawida and Eleanor Obradowsld. The testimony of these witnesses was clearly admissible.
 

 The tenth, eleventh and twelfth assignments charge error in the admission, in rebuttal, of the testimony of three other young girls — Marjorie Lacko, Genevieve Cwiekla, and Marion Antkowick. During his direct examination the defendant denied that he had ever had Joseph Quigley, Gertrude Quigley, Josephine Dawida, or Eleanor Obradowski in his car at any time, and upon cross-examination positively denied (p. 139a) he had made “a practice last summer (1939) of going over on the South Side in the evening and parking [his] car and getting children to come in [his] car.” He asserted he had never driven in the vicinity of the hall or church except upon a few wet evenings when he came over to bring his sister home from her place of employment; never asked any child to get into his car, and never took any boy or girl for a ride. He was then asked specifically whether he had taken Marjorie Lacko, Genevieve Cwiekla and Marion Antkowick, then present in
 
 *575
 
 court and to whom Ms attention was particularly directed, or any of them, out in his car for a ride. The defendant asserted he had never seen Genevieve Cwickla in his life and did not know either of the other girls. Each of these three girls was called in rebuttal and testified they had all been taken out in company with other girls for rides by the defendant at night during the fall of 1939. Under the circumstances, we are not persuaded the trial judge erred in admitting the testimony of these girls for the purpose of rebutting the defendant’s testimony upon that subject.
 

 In the course of her testimony Marion Antkowick related (p. 233a) a remark made to her by another girl during one of their rides with the defendant. This portion of her testimony was not admissible and would doubtless have been stricken out if the trial counsel for defendant had not withdrawn his objection.
 

 In all probability the other matters referred to in the additional assignments will not arise upon the next trial.
 

 Judgments severally reversed and a new trial directed upon each indictment.