Commonwealth *v.* Mourar, Appellant (No. 2).

Argued April 17, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*L. Stanley Mauger,* with him *William A. O'Donnell, Jr., Carroll L. Rutter* and *Rutter, O'Donnell & Mauger,* for appellant.

*Roger B. Reynolds,* Assistant District Attorney, with him *J. Stroud Weber,* District Attorney, for appellee.

OPINION BY ROSS, J., July 20, 1950:

The defendant was tried and convicted on an indictment charging that "on or about the 15th day of April" in 1949, he committed sodomy with one John Yerger. The evidence of the Commonwealth consisted of the testimony of Yerger, a written confession made by the

defendant and the testimony of certain police officers. The defendant, in addition to denying the offense, attempted to establish an alibi.

Yerger testified that the offense occurred at various times "during the spring of 1949". Defendant contends that this testimony as to time of the offense. is too indefinite to support a conviction under. an indictment averring that the offense occurred "on or about the 15th day of April" 1949, and that Yerger's testimony should have been stricken from the record. If this were the only testimony in the case, there might be some force to this argument. However, a confession signed by the defendant and admitted in evidence, stated that the offense occurred "sometime in April 1949" and the police officer who was present when the confession was signed testified that the defendant stated orally that the offense was committed "about the middle of April" in 1949.

In the prosecution of sodomy or other crimes in which a particular date or day of the week is not the essence of the offense, the Commonwealth is not required to prove the commission of the offense charged on the date laid down in the indictment, but failing in that, it has the burden, in order to sustain a conviction, of proving the commission of the crime upon some other date, fixed with reasonable certainty and being within the prescribed statutory period. *Com. v. Levy,* 146 Pa. Superior Ct. 564, 23 A. 2d 97; *Com. v. Neff,* 149 Pa. Superior Ct. 513, 27 A. 2d 737.

" 'In the laying of time, any date may be fixed within the statutory period, and the averment will be supported by proof that the offense occurred at another date within that time, unless time is an element of the crime charged, as in violation of Sunday laws': Sadler's Criminal Procedure in Pennsylvania, (Second Edition, 1937) Sections 232 and 345; Maurer's Notes on Criminal Law, Vol. I, Date, notes 1151-1165, pages 292-294; Com. v.

282

Polin, 140 Pa. Superior Ct. 18, 12 A. 2d 798, and cases cited at pages 24 and 25." *Com. v. Levy,* supra, at page 570.

In this case the Commonwealth established the date of the offense with "reasonable certainty". Consequently, there is no merit to this contention of the defendant.

His second contention is that the trial court erred in admitting in evidence a statement made by the father of the defendant in the latter's presence and in the presence of police officers to whom the defendant had admitted the commission of the offense.

After the defendant had admitted the commission of the crime and had signed a written confession, his father was called to the police station. One of the police officers testified as follows: "Q. When his father came to the Borough Hall in Pottstown, there were present the defendant, his father was there, and the two chiefs of police and yourself, is that correct? A. That is correct. Q. What, if anything, did you tell the father in the presence and within the hearing of the defendant at that time? A. In the presence and hearing of the defendant, I told the father the facts that are contained in the statement and what this man (indicating defendant) had been doing. Q. Go on. Then what took place? A. The father looked at his son and asked him about it, and the son said that was his idea of pleasure and entertainment. Q. What, if anything else, did his father say or do? A. His father made the statement in words to the effect that his tongue should be—". The defendant's objection to this testimony was overruled. and the witness, continuing, in answer to the question "What did he do?" (referring to the father) answered, "Shook his head and said to him that his tongue should be cut out of his head. . . . He, the father, said the boy's tongue should be cut out. . . . Q. What, if anything, did the defendant say to his father when his

father made that remark that he should have his tongue cut out of his head? A. I don't recall his answer. He previously stated that was his way of having pleasure, and he was only having a little fun." Testimony to the same effect was given by the other police officers.

The question raised is whether it was error to admit in evidence the statement made by the father in the presence of the defendant that the latter's "tongue should be cut out of his head". If it was error, it was clearly prejudicial error.

The defendant's objection to this testimony was overruled by the trial court and the testimony admitted under the principle so well set forth by Mr. Justice HORACE STERN in *Com. v. Vallone,* 347 Pa. 419, 421, 32 A. 2d 889: "The rule of evidence is well established that, when a statement made in the presence and hearing of a person is *incriminating* in character and *naturally calls for a denial* but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made. The justification of this rule is to be sought in the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false *accusations* against him, and that a failure to do so is, therefore, some indication of guilt." (Emphasis supplied.) It is our opinion, however, that this rule does not apply to the statement involved in this case; the statement was not a charge or accusation of an "incriminating character" that "naturally" called for a denial. It was merely an expression of the father's opinion of the punishment which should be inflicted upon his son, the defendant, for an offense which the latter had admitted committing. Certainly no inference of guilt arises from the defendant's failure to reply to this expression of opinion.

In our opinion, the admission of the father's statement was such prejudicial error as to require a retrial of this case.

Judgment reversed with a venire.