Commonwealth *v.* Peluso, Appellant

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Thomas F. Traud, Jr.*, Assistant Public Defender, for appellant.

*Richard J. Makoul*, Assistant District Attorney, and *George J. Joseph*, District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 22, 1976:

On January 4, 1972 the home of Ray G. Snyder was burglarized. Seven rifles were taken. In their investigation, the police received information that led them to believe that appellant had in his possession at least one of the stolen rifles, a Weatherby. A search warrant was obtained but the search failed to uncover any of the rifles. Nevertheless, appellant was still indicted for receiving on January 27, 1972 "one model 300 weatherbee [sic] rifle." At trial a demurrer was sustained on that charge because the Commonwealth failed to prove that appellant knew the *Weatherby* was stolen. An appeal taken by the Commonwealth was withdrawn. Shortly thereafter, appellant's former wife, a divorce having been obtained following the first indictment, brought to the police several rifles that her mother had found. Two .22 caliber rifles were identified as having

been stolen from the same residence as the Weatherby. Appellant was then indicted for receiving on January 27, 1972, the two stolen .22 caliber rifles. At the second trial appellant's former wife testified that appellant received all the rifles at the same time on January 27, 1972, and that appellant had stated in her presence that he knew the rifles were stolen. Appellant was found guilty at the second trial. This appeal after conviction on the second indictment followed.

On appeal, several issues are raised. First, appellant raises the defense of double jeopardy as a ground for reversal. It would appear that an argument for collateral estoppel would be appropriate under the facts of this case. However, a review of appellant's brief (no oral argument was made in this case) and the opinion of the lower court convinces us that appellant failed to raise the argument of collateral estoppel before our Court and before the lower court. Instead of arguing collateral estoppel, appellant's argument in support of double jeopardy was based on *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), *vacated and remanded*, *Pennsylvania v. Campana*, 414 U.S. 808 (1973), *addendum opinion, Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969 (1974), as well as §§109 and 110 of the Crimes Code.[1] Therefore, we initially hold that the argument of collateral estoppel is not before us. *Commonwealth v. Mitchell*, 460 Pa. 665, 334 A.2d 285 (1975).

Even if the argument of collateral estoppel was properly raised, we doubt its application to the facts of the present case. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1971).

---

1. Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §§109, 110 (1973).

However, the facts presented at the first trial connected appellant only with receiving the stolen Weatherby on January 27, 1972. The issue of ultimate fact determined at that trial had no reference to the two other rifles appellant was later accused of receiving. Although the second trial demonstrates that appellant received all three rifles at the same time, that evidence was *not* part of the first trial. It is also true that before the first trial the police *suspected* that appellant had in his possession other stolen rifles. However, we cannot conclude that the determination of ultimate fact made at the first trial regarding the stolen Weatherby included a finding as to the rifles appellant was *not* accused of receiving and of which no evidence was there presented.

We will turn next to the argument contained in appellant's brief. At first it must be recognized that §§109 and 110 of the Crimes Code are not applicable to the present case. The Crimes Code "does not apply to offenses committed prior to the effective date of this act and prosecutions for such offenses shall be governed by the prior law ...." Act of December 6, 1972, P.L. 1482, No. 334, §2.

Although the offense in the present case took place before the effective date of the Crimes Code, the second trial occurred following the addendum opinion of the Pennsylvania Supreme Court in *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974). There, the Pennsylvania Supreme Court stated: "The result this Court reached in Campana [first opinion] is entirely in harmony with section 110 of our Crimes Code, which became effective shortly after our decision." *Id.* at 626, 314 A.2d at 856. Thus, the protections set forth in *Campana* apply to the present case. *Campana* specifically prohibits the reprosecution of a defendant for "any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial ...." Crimes Code at §110(1) (ii).

Looking back at the facts of this case it now becomes evident that all the offenses of receiving the stolen rifles took place at one time on January 27, 1972. However, this was not known to the prosecuting officer at the time of the first trial. What was known by the prosecutor at that time? First, it was known by police that seven rifles were stolen from someone's residence. Second, it was discovered that *one* of these rifles, the Weatherby, found its way into the hands of appellant. Third, the police suspected that appellant may have possessed other stolen rifles but, a search for these rifles revealed nothing. While suspicion existed, there was no evidence to support a case against appellant for receiving any of the stolen rifles except the Weatherby. In fact, the result of the first trial demonstrates that the Commonwealth did not even have a prima facie case against appellant for receiving the Weatherby. The prosecuting officer did not at the time of the first trial know that appellant had committed any offense with regard to the other two rifles. It was not until after the first trial that appellant's former wife brought to the police the other rifles and told them that appellant had received them with the Weatherby on January 27, 1972. We do not believe that *Campana* or §110(1) (ii) of the Crimes Code requires a prosecutor to charge an accused with an offense at a time when the prosecutor only suspects that the offense has been committed and has not uncovered any admissible evidence by a good faith investigation which would support a conviction for that offense.

Appellant next argues that the court below erred in permitting appellant's former wife to testify as to certain statements made by appellant (that he knew the rifles were stolen) in her presence during their marriage. The court below ruled that Mrs. Peluso could testify only as to statements made by her husband in the presence of third persons. Appellant's brief correctly perceives that the issue is not one of competency. Since the parties were

divorced prior to the second trial, Mrs. Peluso became *competent* to testify against her husband. *See* Brown, Pennsylvania Evidence, 261 (1949). However, the evidentiary rule that a husband and wife may not testify as to confidential communications made to one another during the marriage remains in force even after death or divorce. *See Hunter v. Hunter*, 169 Pa. Superior Ct. 498, 83 A.2d 401 (1951). This rule, though, does not apply, when the communication is made in the presence of a third person which in effect destroys its confidentiality. *Dumbach v. Bishop*, 183 Pa. 602, 39 A. 38 (1898). Appellant first argues that the communication by appellant to his wife was first made privately before it was repeated in the presence of a third person, a John Bonetsky, and therefore the wife first learned of this information in a confidential manner. While it is true that the subsequent declaration in the presence of others does not remove the confidentiality of what was first disclosed privately, *see, Whitehead v. Kirk*, 104 Miss. 776, 61 So. 737 (1913), it does not follow that later statements made in the presence of others were also confidential. If the statements were freely made in the presence of a third person it is obvious that they were not a product of the marriage relationship. *But see, State v. Brittain*, 117 N.C. 783, 23 S.E. 433 (1895) (statement made by wife in presence of third person when coerced by husband was still confidential). In the present case, there were no circumstances to show that the statements made by appellant in the presence of his wife and Bonetsky were private to the marriage relationship.

Appellant also argues that Bonetsky, the third person, and not Mrs. Peluso, was the only one who could testify as to these statements. It is well established that the wife *may* testify as to statements made in the presence of third persons during the marriage. *Dumbach v. Bishop*, supra. The lower court properly ruled that the former wife could testify as to statements made by appellant in the presence of others.

Appellant's final argument is that it was error for the court below to charge the jury that it need not find that the rifles were received by appellant on January 27, 1972, the date listed in the indictment, if they were received on or about that time. "The general rule is ... [that] '[t]he Commonwealth is not bound by the date laid in the bill of indictment but can show any date within the statutory period and prior to the finding of the indictment, *except in cases where time is of the essence of the offense.'" Commonwealth v. Boyer*, 216 Pa. Superior Ct. 286, 288-89, 264 A.2d 173, 175 (1970) *quoting Commonwealth v. Levy*, 146 Pa. Superior Ct. 564, 571, 23 A.2d 97, 100 (1941). Time is considered of the essence when the defendant presents an alibi defense to the offense charged, *Commonwealth v. Boyer*, supra, or is in some other way prejudiced in his defense by the date set forth in the indictment. *See Commonwealth v. Swint*, 465 Pa. 450, 350 A.2d 851 (1976).

In the present case the only alleged prejudice from the court's charge is that the prosecution would have been barred by the statute of limitations if the jury had found that the rifles were received on or before January 8, 1972. Since appellant was indicted on January 8, 1974, it was necessary for the offense to have been committed in the prior two years. Act of March 31, 1860, P.L. 427, §77, *as amended*, 19 P.S. §211 (1964). Otherwise, the prosecution would have been untimely according to the statute of limitations provided in the above act. A review of the trial record discloses no testimony that would place the offense of receiving the stolen rifles back to a date prior to January 8, 1972. Mrs. Peluso testified on direct that the appellant received the rifles on January 27, 1972, but on cross-examination she was unsure of the exact date. She did, however, state that it was the last week of January rather than the middle of the month. Because there was no evidence to indicate that the offense took place in early January, there is no possibility that the jury could have found that the crime occurred

on a date in violation of the statute of limitations. No prejudice having been shown by appellant, we are convinced that it was not error for the court below to instruct the jury that the offense could have been committed *on or about* January 27, 1972.

For the above reasons, the judgment of sentence is affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that the instant prosecution for receiving stolen goods was barred by the Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

The facts relevant to appellant's claim were elicited at pre-trial hearings. On January 4, 1972, the residence of Ray Snyder in Coopersburg was burglarized, and seven rifles were taken.[1] Subsequently, Leslie Nonemaker told Detective Neimeyer of the Allentown Police Department that appellant had sold him a 300-Magnum Weatherby rifle for $150.00. Although the record is not entirely clear, Nonemaker apparently gave appellant a check and recorded the serial number of the rifle on his checkbook stub. At some point, Nonemaker requested a receipt, but appellant went to the Nonemaker home, retrieved the rifle from Mrs. Nonemaker, and never returned it. The police checked the serial number against those of the rifles taken from Ray Snyder and determined that the Weatherby was one of the stolen weapons.

On February 22, 1972, Officer Sandy of the Upper Saucon Police Department obtained a warrant for appellant's arrest and a warrant to search appellant's residence. The search warrant listed all seven rifles taken from the Snyder home as the evidence sought.

---

1. Appellant was never arrested for the burglary. Four persons, three of whom were juveniles, were convicted. None of the four, however, ever implicated appellant as a receiver.

Although the search proved fruitless, Officer Sandy swore out a criminal complaint charging that appellant received a rifle on January 27, 1972, knowing or having reasonable cause to know that it was stolen. The Grand Jury returned an indictment, and appellant was tried on April 23, 1973. After the Commonwealth presented its case, the trial court sustained appellant's demurrer.[2] The Commonwealth perfected an appeal to this Court, but it was subsequently withdrawn for reasons not appearing of record.

The police did not pursue the case until September 24, 1973, when Mrs. Peluso and her mother, Mrs. Helvig, brought five rifles to the Allentown Police Station. Mrs. Helvig told the police that she discovered the rifles wrapped in a bedspread, when she was cleaning the area underneath the porch. Mrs. Peluso also gave a statement to the police. She informed them that on January 27, 1972, John Bonetsky, one of the later-convicted burglars, came to their home and sold her husband several guns. Mrs. Peluso also told the police that her husband had stated, in Bonetsky's presence, that the rifles were stolen. The police checked the serial numbers of the five rifles and determined that two of them had been stolen from the Snyder residence. Mrs. Peluso, however, was able to identify only one of the rifles discovered underneath her mother's porch as one of the rifles her husband had purchased from Bonetsky.

The Grand Jury of Lehigh County returned an indictment against appellant, charging "that on the twenty-seventh day of January, 1972, in said County of Lehigh, the said Francis Peluso did unlawfully receive,

---

2. The police never questioned Mrs. Peluso because they were aware that a wife was incompetent to testify against her husband. In fact, appellant and Mrs. Peluso were divorced two weeks prior to the trial. As will be discussed, infra, her testimony was crucial to the Commonwealth's case, and her failure to testify at appellant's first trial was a major reason for the granting of appellant's demurrer.

retain or dispose of moveable property of another, to wit, one .22 rifle Bolt Action with Weaver scope, and one .22 rifle make Iver Johnson ... knowing that it had been stolen or believing that it had probably been stolen ...."

Appellant raised two issues prior to trial: that Janet Peluso could not testify that appellant made incriminating statements during the time they were married, and that the Double Jeopardy Clause barred the second trial for receiving stolen goods. Both were denied by the lower court. Appellant was tried by a jury and found guilty. Because I believe that appellant's double jeopardy contention is meritorious, I need not decide whether Mrs. Peluso was properly allowed to testify.

Both the appellant and the lower court treat our Supreme Court's decision in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated and remanded, *Pennsylvania v. Campana*, 414 U.S. 808 (1973), re-established, *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974), as dispositive. *Campana* adopted §1.07(2) of the Model Penal Code as a means of preventing successive prosecutions: "[A] defendant shall not be subject to *separate* trials for multiple offenses *based on the same conduct or arising from the same criminal episode, if such offenses are known* to the appropriate prosecuting officer at the time of the commencement of the first trial ...." 452 Pa. at 247-248, 304 A.2d at 438. It is clear that *Campana* does not rest on federal constitutional requirements, see *Commonwealth v. Campana*, 455 Pa. at 624, 314 A.2d at 855, but is an exercise of the Pennsylvania Supreme Court's supervisory power over state criminal proceedings. See Pa. Const. art. V, §10. Whether or not the facts of the instant case are within the *Campana* proscription against successive prosecutions, the federal constitution prohibited appellant's second trial.

In *Ashe v. Swenson*, 397 U.S. 436 (1970), the United States Supreme Court held that collateral estoppel in

criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth Amendment. The Court stated that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443. See also *Turner v. Arkansas*, 407 U.S. 366 (1972); *Simpson v. Florida*, 403 U.S. 384 (1971); *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972). Collateral estoppel, however, can be applied only in limited circumstances. In *Campana*, our Supreme Court described the narrow protection collateral estoppel affords a defendant faced with successive prosecutions: "That imprecise doctrine has proven quite difficult and burdensome for appellate courts to properly and uniformly apply. Before the doctrine of collateral estoppel can apply the first trial must end in acquittal, and a 'rational' reading of the record must disclose that the jury based its verdict of acquittal on but *one* issue." 452 Pa. at 246-247, 304 A.2d at 438. When the previous judgment of acquittal is based on a general verdict, the appellate court must "examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Wingate v. Wainwright*, supra at 212. Thus, it is a rare situation in which the collateral estoppel defense will be available to a defendant. See *United States v. Tramunti*, 500 F.2d 1334 (2d Cir. 1974), cert. denied, 419 U.S. 1079; *United States v. Cioffi*, 487 F.2d 492 (2d Cir. 1973), cert. denied, 416 U.S. 995; *United States v. Fusco*, 427 F.2d 361 (7th Cir. 1970).

There is no difficulty, however, in applying collateral estoppel in the instant case. At appellant's first trial for receiving the stolen Weatherby rifle, the Commonwealth relied mainly on the testimony of Mr. Nonemaker. Thus,

the Commonwealth proved that a rifle had been stolen and that appellant had possessed the weapon at some point. Under the 1939 Penal Code, the crime of receiving stolen property was defined as follows: "Whoever buys, has, or receives any goods, chattels, money or securities, or any other matter or thing, which shall have been stolen or feloniously taken, ... knowing, or having reasonable cause to know the same to have been stolen or feloniously taken, is guilty of a felony ..."[3] Thus, there are three elements of the crime: possession of a stolen item knowing or having reasonable cause to know that it was stolen. The Commonwealth clearly proved that the Weatherby was stolen, and Mr. Nonemaker's testimony showed that appellant was in possession of the rifle. But the trial court sustained appellant's demurrer. Thus, the court could only have concluded that the Commonwealth's evidence failed to prove that appellant knew or had reason to know that the Weatherby had been stolen.[4] That issue, therefore, was determined in appellant's favor.[5]

The Commonwealth, however, obtained additional evidence on the scienter issue prior to the second trial, as Mrs. Peluso was prepared to testify that her husband had admitted to her that the rifles were stolen. The availability of additional relevant evidence, however, does not preclude the defense of collateral estoppel: "Certainly where an issue has been determined in a prior

---

3. Act of June 24, 1939, P.L. 872, §817; May 21, 1943, P.L. 306, §1; 18 P.S. §4817, superseded by Act of Dec. 6, 1972, P.L. 1482, No. 334, §1; 18 Pa.C.S. §3925.

4. The lower court does not dispute this conclusion. In its opinion, the court stated: "The first indictment was dismissed because the only facts proven by the Commonwealth were that several guns had been stolen and at some point in time defendant had been in possession of the Weatherby. Because the prosecution could not prove the requisite scienter or knowledge that the gun had been stolen, its case was obviously defective."

5. Because the Commonwealth withdrew its appeal, the demurrer is a valid and final judgment. See 18 Pa.C.S. §110(2).

prosecution, the state is barred from bringing any subsequent prosecution in which a different determination of that issue is necessary to prove the offense charged." *Wingate v. Wainwright,* supra at 213. The constitutional guarantee applies even though the additional evidence indicates that the prior acquittal may have been erroneous.

In *Harris v. Washington,* 404 U.S. 55 (1971), a bomb sent through the mail exploded in the home of Ralph Burdick, killing Burdick and petitioner's son, and seriously injuring petitioner's estranged wife. Initially, petitioner was tried for the murder of Ralph Burdick. The state attempted to introduce a letter allegedly written by petitioner which threatened both Burdick and petitioner's wife. This evidence, however, was excluded, and petitioner was acquitted. Immediately thereafter, petitioner was rearrested and charged with the murder of his son and the assault of his wife. At the second trial, the letter was admitted and petitioner was convicted. Although the same ultimate issue was involved in both prosecutions, *i.e.,* the identity of the person who mailed the bomb, the State Supreme Court upheld the conviction on the theory that the issue had not been fully litigated in the first prosecution because the letter had been excluded. The United States Supreme Court reversed: "The State concedes that the ultimate issue of identity was decided by the jury in the first trial. That being so, the constitutional guarantee applies, *irrespective of whether the jury considered all relevant evidence, and irrespective of the good faith of the State* in bringing successive prosecutions." 404 U.S. at 56-57 (Emphasis added).

In the instant case, the trier of fact at the first trial determined that appellant did not know that the Weatherby was stolen. It would seem, therefore, that the Commonwealth would be precluded from proving that appellant knew that the two .22 rifles were stolen. The lower court attempted to distinguish the two prosecutions

by holding that the three rifles may have been received at different times: "We do not believe it inevitably follows that because objects were admittedly stolen at one time, they were necessarily received by another at the same time or as part of a same episode." As a general proposition, this statement is certainly true. Under the facts of the instant case, however, it is impossible to sustain. In the first place, the warrant authorizing the search of appellant's residence averred that the police had reason to believe that *all* the guns taken from Mr. Snyder were in appellant's possession. Second, the indictments for *both* prosecutions allege that the stolen items were received on the same date, January 27, 1972. Third, and most important, the pre-trial testimony of Janet Peluso completely negates any· possibility that appellant received the guns at different times. She stated that John Bonetsky gave appellant all the guns on the evening of January 27, 1972. Thus, all the evidence available to the lower court pointed to the conclusion that the rifles were received at the same time. The lower court also knew that at appellant's first trial, a demurrer was granted because the Commonwealth failed to prove that appellant knew the Weatherby was stolen. Because that ultimate issue of fact was previously decided in appellant's favor, the Commonwealth was precluded from bringing a second prosecution for receiving stolen goods as a different determination of that issue was necessary to prove the crime charged.

Judgment of sentence should be reversed, and appellant ordered discharged.

CERCONE and SPAETH, JJ., join in this dissenting opinion.