## Commonwealth v. Dedo

*Peter F. Dixon, Assistant District Attorney,* for Commonwealth.

*Raymond H. Bogaty* and *Byrd R. Brown,* for defendants.

ZIEGLER, *J.,* September 14, 1977—

## I. STATEMENT OF FACTS

These cases present two questions of importance: (1) Whether Pa.R.Crim.P. 1100(c) authorizes an extension of time for commencement of trial while a co-conspirator litigates the competency of a potential witness for the Commonwealth in the appellate courts of this State; and (2) whether the indictments can be amended to establish "subject matter" jurisdiction of the Court of Common Pleas of Allegheny County. We answer both questions in the negative and dismiss the indictments.

Defendants, Thaddeus J. Dedo and Fred Orlosky, were indicted for criminal conspiracy[1] arising from the fictitious sale of real estate in North Carolina owned by the United States of America. Defendants allegedly participated in a conspiracy to sell land to the victim, George Wilhelm, when Dedo posed an an employe of the Federal govern-

---

1. Act of December 6, 1972, P.L. 1482, sec. 1, 18 C.P.S.A. §903, effective June 6, 1973.

ment. The victim paid money for the property and received fraudulent deeds from Dedo, Clarence Miller and Charles J. Goldblum.[2]

Complaints were filed against Dedo and Orlosky on April 19, 1976. The Commonwealth intended to rely, in part, upon the testimony of Clarence Miller. Miller testified at a preliminary hearing regarding the complicity of Goldblum, Dedo and Orlosky in the scheme. On July 15, 1976, Goldblum filed an "Application for Court Approval of Private Prosecution" of Miller for perjury secondary to Miller's admitted sworn pretrial letter to the Federal Bureau of Investigation wherein he denied involvement in any land fraud. Goldblum asserted that Miller was an incompetent witness as a matter of law pursuant to an Act of the General Assembly. See Act of May 23, 1887, P.L. 158, sec. 2(a), as amended, 19 P.S. §682. The trial judge denied the application on July 30, 1976, and an appeal was taken to the Superior Court of Pennsylvania at April term, 1977, no. 22.[3]

On October 12, 1976, due to the pendency of the Goldblum appeal, as well as the desire of the prosecutor to prosecute the homicide charges against Goldblum and Miller before trying the instant charges against Dedo and Orlosky, the Commonwealth filed an application to extend the final trial date of October 15, 1976. Defendants contested the

---

2. Goldblum was found guilty of first degree murder and conspiracy on August 30, 1977, arising, in part, from the instant factual allegations. Miller is scheduled for trial on charges of murder and conspiracy on February 13, 1978.

3. The Superior Court affirmed the order of the trial court on January 17, 1977. A petition for allocatur was denied by the Supreme Court of Pennsylvania on May 11, 1977, and the record was remanded to the lower court on May 23, 1977.

application. The trial judge granted the application and extended the date of trial until "120 days of the final appellate decision in Goldblum appeal."

Prior to the new trial date of September 13, 1977, defendants filed timely motions to dismiss the indictments, alleging, inter alia, a violation of Rule 1100. Since the court did not have the benefit of the decisions of Commonwealth v. Mayfield, 469 Pa. 214, 364 A.2d 1345 (1976), or Commonwealth v. Shelton, 469 Pa. 8, 364 A.2d 694 (1976), or their progeny, on October 12, 1976,[4] and since our research indicates that this question is one of first impression, and since the adjudication of these cases may involve extensive testimony and lengthy trials, we will resolve all questions prior to trial in the interest of judicial economy.

## II. STATEMENT OF LAW

### (A) Rule 1100

Turning to the first question, we note the Commonwealth's petition to extend commencement of trial pursuant to Rule 1100(c) was timely. See Commonwealth v. O'Shea, 465 Pa. 491, 350 A.2d 872 (1976); Commonwealth v. Shelton, 469 Pa. 8, 364 A.2d 694 (1976). We must next decide whether the Commonwealth exercised "due diligence," and whether the appeal of Goldblum prevented the trial of these defendants during the pendency of the appeal. Stated another way, did the prosecution attempt to delay the commencement of these cases until the homicide cases were tried for tacti-

---

4. Mayfield and Shelton, supra, were reported in the Atlantic Reporter, for the first time, on November 27, 1976, and November 13, 1976, respectively.

cal reasons, and in contravention of the rights of defendants to a prompt trial?

The definition of "due diligence" in the context of this case remains undefined. In Commonwealth v. Hagans, 242 Pa. Superior Ct. 393, 364 A.2d 328 (1976), the Superior Court held that "Rule 1100 does not create any further duty on the part of a defendant who is prosecuted by the Commonwealth along with his co-defendants in a joint trial to affirmatively dissociate himself from their delays." The court reversed the conviction and opined "that a defendant may 'idly stand by' and wait for the Commonwealth to bring his case to trial." Ibid.

It is true, of course, that if pretrial delay is caused by events which are beyond the control of the court system, or the parties, the Commonwealth may seek an extension of time pursuant to Rule 1100(c). See Commonwealth v. Metzger, ____ Pa. Superior Ct., ____, ____, 375 A.2d 781, 783-86 (1977). While an extension was sought herein, we are not convinced the reasons advanced by the prosecution outweigh the right of defendants to a trial within 180 days of the filing of the complaints. The fact Goldblum alleged that Miller was incompetent to testify against Goldblum because of alleged partial perjury did not prevent litigation of the instant matter against these defendants. Assuming Dedo and Orlosky were convicted based upon the testimony of Miller, and an appellate court adjudged Miller incompetent as a witness, the judgment vis-a-vis these defendants could be arrested. Hence, the instant charges were ripe for adjudication on or before October 15, 1976, notwithstanding the appeal of Goldblum.

The purpose of Rule 1100 is to protect the rights

of our citizens to a prompt trial, and to insure that the guilty are swiftly punished. The Supreme Court has properly observed that "[t]he public has an overriding interest in the prompt trial of the criminally accused." Commonwealth v. Mayfield, 469 Pa. 214, 221, 364 A.2d 1345, 1349 (1976). While we are sympathetic to the problems of the executive branch in an urban county, we cannot abdicate our responsibility to effectuate the policies of the Supreme Court.

In the instant case, in our judgment, the Commonwealth never intended to try Dedo or Orlosky until the homicide cases against Goldblum and Miller were resolved. It is absurd to contend that Dedo and Orlosky could have been tried in the period from October 12 to October 15, 1976, if the court denied the extension. The Commonwealth never moved to consolidate the cases and, as admitted, these cases were to be tried at a later date. Finally, the charges against these defendants, while pending, constituted an inducement to cooperate in the prosecution of the more serious crimes. Such tactical decisions are made by prosecutors throughout the United States on a daily basis, and we ascribe no sinister motive. It is frequently an effective tool. But, it must yield to the rights of an accused to a prompt trial.

Our research has revealed several recent cases in which an extension by a trial court pursuant to 1100(c) has been reversed for want of due diligence. See Commonwealth v. Martin, 246 Pa. Superior Ct. 407, 371 A.2d 903 (1977); Commonwealth v. Reddington, 241 Pa. Superior Ct. 393, 361 A.2d 760 (1976); Commonwealth v. Sprankle, 241 Pa. Superior Ct. 298, 361 A.2d 385 (1976). As a result, we hold that, where the Commonwealth

charges multiple defendants with complicity in large-scale criminal activity, the delay associated with pretrial motions instituted by one or more of the parties does not warrant an extension of Rule 1100 with regard to those defendants who are not the moving parties, absent compelling circumstances, or a voluntary and understanding waiver of the rule. Cf., Commonwealth v. Hagans, 242 Pa. Superior Ct. 393, 364 A.2d 328 (1976).

### (B) The Indictments

The indictments charge defendants with criminal conspiracy which allegedly occurred on or about June 30, 1974. The location of the making of the unlawful agreement is omitted from each indictment. Several overt acts are mentioned but none allegedly occurred within Allegheny County.[5] In short, the Commonwealth has failed to itemize any fact which conveys jurisdiction upon this court.

Section 903(d)(2)(i) of the Crimes Code of 1972 provides that "no defendant shall be charged with a conspiracy in any county other than the one in which he entered into such conspiracy or in which an overt act pursuant to such conspiracy was done by him or by a person with whom he conspired." This act is consistent with the basic law of Pennsylvania which provides that, before a county may assume jurisdiction over a crime, some overt act must have occurred therein: Commonwealth v. Creamer, 236 Pa. Superior Ct. 168, 345 A.2d 212 (1975); Commonwealth v. Simeone, 222 Pa. Superior Ct. 376, 294 A.2d 921 (1972). In the case of conspiracy, either the agreement or some overt act by one of the conspirators must occur within

---

5. Skyline Inn is located in Washington, D.C.

the county for the court to assert "subject" jurisdiction over all. Ibid.

In the instant case, the indictments are defective on their face. We must turn, however, to the next question, namely, whether the defect is fatal. A defect in form may be amended, but a substantive defect may not be amended once an indictment is forged by a grand jury: Commonwealth v. Swint, 465 Pa. 450, 350 A.2d 851 (1976); Commonwealth v. Bruce, 230 Pa. Superior Ct. 507, 326 A.2d 628 (1974); Commonwealth v. Brown, 229 Pa. Superior Ct. 67, 323 A.2d 845 (1974). See also, Pa. R. Crim. P. 220. Although Criminal Rule 220 permits an amendment relative to form or description of offense, person, property or date of the offense, the rule makes no reference to jurisdiction.

The Commonwealth contends that jurisdictional allegations are mere form and not substantive. It has failed to cite any controlling authority to support its position. We must reluctantly disagree, therefore, for several reasons. First, in our judgment, jurisdictional averments are the most significant and basic facts of any criminal proceeding. Second, the prosecutor intentionally deleted any reference to Allegheny County in the second line of each indictment. The printed form, after the date of the offense, reads: "in the said County . . ." This has been stricken by the scrivener. Such an intentional act must be deemed significant. Since there are no subsequent facts which allege any criminal act by any conspirator within the County of Allegheny, the deletion is controlling. Third, the indictment fails to apprise defendants of the location of the acts for which they are accountable. Cf. Commonwealth v. Petrillo, 338 Pa. 65, 77-79, 12 A.2d 317, 324 (1940); Common-

wealth v. Bruce, 230 Pa. Superior Ct. 511, 326 A.2d 628 (1974). Finally, it is clear that we are here confronted with a question of jurisdiction and not venue. See Commonwealth v. Simeone, 222 Pa. Superior Ct. 376, 294 A.2d 921 (1972).

For the foregoing reasons, the indictments must be dismissed.