**Commonwealth v. Wiggins**

540

*Robert Salurman, district attorney,* for Commonwealth.

*Wieslaw T. Niemoczynski,* for defendant.

WORTHINGTON, *J.,* July 17, 2006—On September 12, 2005, the Commonwealth filed a criminal information charging Rasheem Wiggins (defendant) with one count each of rape of a child, in violation of 18 Pa.C.S. §3121(c), statutory sexual assault, in violation of 18 Pa.C.S. §3122(1), involuntary deviate sexual intercourse with a person less than 16 years of age, in violation of 18 Pa.C.S. §3121(a)(7), aggravated indecent assault of a person less than 13 years of age, in violation of 18 Pa.C.S. §3125(7), endangering the welfare of children, in violation of 18 Pa.C.S. §4304(a), unlawful contact/communication with a minor, in violation of 18 Pa.C.S. §6318(a)(1), and corruption of minors, in violation of 18 Pa.C.S. §6301(a)(1).

Following a two-day trial, held on January 9 and January 10, 2005, a jury found defendant guilty on all counts except for endangering the welfare of children. On April 19, 2006, after reviewing a pre-sentence investigation report prepared by the Monroe County Probation Department, we sentenced defendant to undergo a period of incarceration in a state correctional institution of not less than eight years, with a maximum not to exceed 16 years. Defendant was further ordered to undergo a sexual offender evaluation. After holding a hearing on the matter, we found defendant to be a sexually violent predator, and directed that he comply with all of the registration requirements set forth in 42 Pa.C.S. §9795.1.

Defendant filed a timely post-sentence motion on April 27, 2006, in which he argued that (1) his sentence was excessive given the circumstances of the case, (2) there were no aggravating circumstances, and (3) the evidence did not support the sexually violent predator status. We held a hearing on defendant's post-sentence motion on May 15, 2006 and, by order issued after hearing, we denied defendant's post-sentence motion.

Defendant filed a concise statement of matters complained of on appeal on June 5, 2006. In his 1925(b) statement, defendant argues that we erred, in our capacity as the trial court, in: (1) denying his motion in limine to limit the Commonwealth's proof to dates and times reasonably related to March 28, 2006, the date set forth in the criminal information; (2) denying his motion in limine on jurisdictional grounds where the criminal information lacked jurisdictional facts in its concise statement of facts; (3) denying his reasonable request for an instruction to the jury that it could consider the victim's belief that "make believe" was true in considering her testimony and making its determination in the case; (4) denying his request on two occasions, when the jury had posed questions during deliberations, to instruct the jury regarding the beyond a reasonable doubt standard of proof that the jury was to apply in deciding the case; (5) accepting the opinion of the Sexual Offender Assessment Board representative because the opinion was inadequately supported by necessary facts in that no reasonable effort had been made to review defendant's history, the expert did not review the trial testimony, the expert transmuted the lack of evidence into evidence itself, and the expert purported to rely on defendant's prior acquit-

tal in another matter to support her opinion; and (6) sentencing him in the aggravated range because no actual aggravating circumstances existed. We will address each of defendant's arguments in turn.

Defendant's first and second arguments on appeal are based upon our denial of defendant's motions in limine. Defendant's initial argument is that we erred in denying his motion in limine to limit the Commonwealth's proof to dates and times reasonably related to March 28, 2006, which is the date set forth in the criminal information. In his second argument, defendant contends that we erred in denying his motion in limine on jurisdictional grounds where the criminal information lacked jurisdictional facts in its concise statement of facts.

Pennsylvania Rule of Criminal Procedure 560 sets forth the requirements for the filing of a criminal information and provides:

"(A) After the defendant has been held for court, the attorney for the Commonwealth shall proceed by preparing an Information and filing it with the court of common pleas.

"(B) The Information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

"(1) a caption showing that the prosecution is carried on in the name of, and by the authority of, the Commonwealth of Pennsylvania;

"(2) the name of the defendant, or if the defendant is unknown, a description of the defendant as nearly as may be;

"(3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient;

"(4) the county where the offense is alleged to have been committed;

"(5) a plain and concise statement of the essential elements of the offense, substantially the same as or cognate to the offense alleged in the complaint; and

"(6) a concluding statement that 'all of which is against the Act of Assembly and the peace and dignity of the Commonwealth.'" Pa.R.Crim.P. 560.

In his first argument on appeal, defendant contends that we erred in denying his motion in limine to limit the Commonwealth's proof to dates and times reasonably related to March 28, 2006, which is the date set forth in the criminal information. Our courts have repeatedly held that the Commonwealth is not restricted, in proving the date of an offense, to that alleged in the information. *Commonwealth v. Neff,* 149 Pa. Super. 513, 517-18, 27 A.2d 737, 739 (1942), citing *Commonwealth v. Levy,* 146 Pa. Super. 564, 23 A.2d 97 (1941). Rather, "the burden upon the Commonwealth is met by proof of the commission of the offense on some other date, fixed with reasonable certainty and within the prescribed statutory period." *Id.*

In this case, the Commonwealth's chief witness was the victim, a 5-year-old girl. Moreover, this was a case

that involved sexual assault over a period of time while defendant was grooming the victim. It was sufficient for the Commonwealth to allege in the information the only date on which they knew with reasonable certainty that the offenses had occurred. The Commonwealth "need not always prove a single specific date for the crime charged; permissible leeway varies with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused." *Commonwealth. v. Devlin,* 460 Pa. 508, 516, 333 A.2d 888, 892 (1975). Accordingly, we gave the Commonwealth some latitude in proving the pattern of behavior that led up to the incidents of March 28, 2006. That is not to say that the Commonwealth was at liberty to explore dates and times not reasonably related to the incident in question. Rather, we denied defendant's motion in limine because it was a request for an excessive limiting of the Commonwealth's proof to the March 28, 2006 date. For the foregoing reasons, we maintain that our denial of defendant's motion in limine in this regard was proper.

In his second argument on appeal, defendant contends that we erred in denying his motion in limine on jurisdictional grounds because the criminal information lacked jurisdictional facts in its concise statements of facts. We denied defendant's motion in limine because we found the information to be satisfactory and in accordance with the rules governing the filing of informations. Although each discrete statement of facts in support of each count of the information did not include the name of the county, that information was included in the introductory language, which stated: "The attorney for the Commonwealth of Monroe County by this information

charges that in the County of Monroe, Pennsylvania . . . ."
(Criminal information.)

Our courts have consistently held that a criminal information should be read in a commonsense manner, rather than being construed in an overly technical manner. See *Commonwealth v. Orrs,* 433 Pa. Super. 260, 263, 640 A.2d 911, 912 (1994). Here, the language of the information demonstrated that the prosecution was carried on by the authority of the Commonwealth of Pennsylvania and the County of Monroe, included defendant's name, included the date the offense was alleged to have been committed, put defendant on notice regarding the criminal acts with which he was being charged, the statutory sections that were, in turn, implicated, and his alleged conduct that gave rise to the charges, included the requisite "all of which is against the . . . peace and dignity . . ." language, and was signed by an attorney for the Commonwealth. The criminal information filed in this case contained the necessary jurisdictional facts and, as such, our denial of defendant's motion in limine was proper.

Defendant's third and fourth arguments on appeal are based upon our denials of various requests made by defense counsel regarding jury instructions. In his third argument, defendant contends that we erred in denying his reasonable request for an instruction to the jury that it could consider the victim's belief that "make believe was true" in considering her testimony and making its determination in the case. In his fourth argument, defendant contends that we erred in denying his request on two occasions, when the jury had posed questions during

its deliberation, to charge the jury with the standard instruction regarding the proof beyond a reasonable doubt standard that the jury was to apply in deciding the case.

The victim in this case, R.S., was 6 years old at the time of the trial, and 6 years old when the criminal conduct occurred. (N.T., 01/09/06, p. 23.) When young children are called to testify, they "must be examined for competency pursuant to the following test: (1) [the] witness must be capable of expressing intelligent answers to questions; (2) [the] witness must have been capable of observing the event to be testified about and have the ability to remember it; and (3) [the witness must be aware] of the duty to tell the truth." *Commonwealth v. Judd,* 897 A.2d 1224, 1228 (Pa. Super. 2006), citing *Commonwealth v. Delbridge,* 578 Pa. 641, 662, 855 A.2d 27, 39 (2003), *opinion after remand,* 580 Pa. 68, 859 A.2d 1254 (2004). Accordingly, when the attorney for the Commonwealth called the victim to testify, he preceded his direct examination by asking her some basic questions to establish her competency as a witness. After the prosecutor had the opportunity to pose questions, defense counsel was likewise given the opportunity to ask the victim questions in relation to her competency as a witness. Defense counsel posed a single question:

"Defense counsel: Now, if I make believe I'm a fish and play that way, is that the truth or a lie?

"Witness: Truth." (N.T., 01/09/06, pp. 25-26.)

At the conclusion of our jury instructions at the close of trial, defense counsel approached at side-bar and asked that we instruct the jury that "it could consider the vic-

tim's belief that 'make believe' was true in considering her testimony and making its determination in the case." We denied his motion at side-bar (N.T., 01/10/06, p. 84) and now maintain that was the appropriate decision. During our final instructions, we charged the jurors as follows:

"Now, one of the very important things that you all do . . . is that you are the judges of the facts. And you are the people who determine the credibility of the witnesses that you heard testify from the witness stand.

"I'm going to give you some instructions now on how you are to go about the things you are to consider in judging that credibility.

"As the judges of the facts, you are the sole judges of the credibility of the witnesses and their testimony. This means you must judge the truthfulness and accuracy of each witness' testimony and decide whether to believe all or part or none of that testimony. . . .

"While you are judging the credibility of each witness, you are likely to be judging the credibility of other witnesses or evidence. If three is a real irreconcilable conflict, it is up to you to decide which, if any, conflicting testimony or evidence to believe.

"As the sole judges of credibility and fact, you the jurors are responsible to give the testimony of any witness, and all of the other evidence, whatever credibility and weight that you think it deserves.

"If you decide that a witness has deliberately testified falsely about a material point, that is, about a matter that could affect the outcome of this trial, you may for that

reason alone choose to disbelieve the rest of his or her testimony, but you are not required to do so. You should consider not only the deliberate falsehood but also all other factors bearing on a witness' credibility in deciding whether to believe other parts of his or her testimony.

"Where there is a conflict in the testimony, the jury has the duty of deciding which testimony to believe. But you should first try to reconcile, that is, fit together, any conflicts in the testimony if you can fairly do so." (N.T., 01/10/06, pp. 72-73, 74-75.)

By reciting the foregoing instruction, we directed the jurors how they were to determine the credibility of each witness. There was no need to specifically direct the jurors that they "could consider the victim's belief that 'make believe' was true in considering [the victim's] testimony and making its determination in the case," because they were already told that they should consider "the truthfulness and accuracy of each witness' testimony and decide whether to believe all or part or none of that testimony."

In his fourth argument, defendant contends that we erred in denying his request on two occasions, when the jury had posed questions during its deliberation, to instruct the jury regarding the beyond a reasonable doubt standard of proof that it was to apply in deciding the case. We commenced our jury charge with the standard instruction regarding burden of proof. We stated:

"A fundamental principle of our system of criminal law is that the defendant is presumed to be innocent. The mere fact that he was arrested and accused of a crime is not any evidence against him. Furthermore, the defendant

is presumed innocent throughout the trial and unless and until you conclude based on careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt.

"It is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt. . . .

"Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence.

"A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own life. I'll tell you that again. This is the legal definition of reasonable doubt. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own life.

"A reasonable doubt must fairly arise out of the evidence that was presented, or out of the lack of evidence presented, with respect to some element of the crime. A reasonable doubt must be a real doubt. It may not be an imagined one, nor may it be a doubt manufactured in order to avoid carrying out an unpleasant duty.

"To summarize, you may not find the defendant guilty based on a mere suspicion of guilt. The Commonwealth

has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, then the defendant is no longer presumed innocent, and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find the defendant not guilty." (N.T., 01/10/06, pp. 64-66.)

Likewise, when the jurors returned from their deliberation and asked the court to re-read each of the criminal charges, before we responded to their question, we reminded them of the burden of proof as follows:

"There were multiple counts of this information, as you recall, and I'll go through these independently now.

"Remember that in the course of the presentation of a trial it's the burden of proof upon the Commonwealth to establish beyond a reasonable doubt that the elements of the offense occurred . . . ." (N.T., 01/10/06, pp. 87-88.)

The jury never interrupted its deliberation to ask us to clarify the burden of proof in this case. Each juror was apprised of the burden of proof during jury selection, during the prosecutor's and defense counsel's opening statement and closing argument, and by the court in our final charge. We therefore denied defense counsel's request to read the jurors that charge again. We maintain that there was no error in that decision.

In his fifth argument on appeal, defendant contends that we erred in accepting the opinion of the Sexual Offender Assessment Board representative because: (1) the expert's opinion was inadequately supported by necessary facts because no reasonable effort had been made

to review defendant's history; (2) the expert did not review the trial testimony; (3) the expert transmuted the lack of evidence into evidence itself; and (4) the expert purported to rely on defendant's prior acquittal in another matter to support her opinion.

When a court determines by clear and convincing evidence that a defendant is a sexually violent predator, that defendant becomes subject to the reporting requirements of Megan's Law II. 42 Pa.C.S. §9795.1(b) provides, in pertinent part:

"The following individuals shall be subject to lifetime registration:

"(1) An individual with two or more convictions of any of the offenses set forth in subsection (a)

"(2) Individuals convicted of any of the following offenses:

"18 Pa.C.S. §3121 (relating to rape)

"18 Pa.C.S. §3123 (relating to involuntary deviate sexual intercourse)

"18 Pa.C.S. §3124.1 (relating to sexual assault)

"18 Pa.C.S. §3125 (relating to aggravated indecent assault)

"18 Pa.C.S. §4302 (relating to incest) when the victim is under 12 years of age

"(3) Sexually violent predators." 42 Pa.C.S. §9795.1(b).

Because rape of a child, statutory sexual assault, involuntary deviate sexual intercourse, and aggravated

indecent assault are predicate offenses triggering an adjudication of sexually violent predator status under Pennsylvania's Registration of Sexual Offenders Act (Megan's Law II), see 42 Pa.C.S. §9795.4(a), we ordered the State Sexual Offenders Assessment Board to evaluate whether defendant is a sexually violent predator.[1]

The assessment procedure, in relevant part, was as follows. After conviction but prior to sentencing, we ordered defendant, who was found guilty after trial by jury of various offenses specified in section 9795.1, to be assessed by the board. A member of the board, Paula B. Brust M.A., then conducted an assessment of defendant to determine if he should he classified as a sexually violent predator. Ms. Brust submitted a written report containing her assessment to the district attorney. (Commonwealth's exhibit no. 2.) Thereafter, a hearing was held to determine whether defendant is a sexually violent predator. At the time of the hearing, prior to sentencing, a determination of sexually violent predator status pursuant to Megan's Law II was submitted to the court. We determined that the Commonwealth proved by clear and convincing evidence that defendant is a sexually violent predator. See 42 Pa.C.S. §9795.4; see also, *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003). Megan's Law II defines a "sexually violent predator" as:

"A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registra-

---

1. Under Megan's Law II, any offender convicted of a predicate offense, whether or not he is deemed a sexually violent predator, must participate in the registration system. See 42 Pa.C.S. §9795.4; see also, *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003).

tion) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) *due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.*" 41 Pa.C.S. §9792; *Commonwealth v. Bey,* 841 A.2d 562, 563 (Pa. Super. 2004). (emphasis in original)

In reviewing the sufficiency of the evidence regarding the determination of sexually violent predator status, an appellate court will reverse the trial court only if it finds that the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. *Commonwealth v. Moody,* 843 A.2d 402, 408 (Pa. Super. 2004); 42 Pa.C.S. §9791 et seq.

At the hearing, prior to the imposition of sentence, we determined that the Commonwealth proved by clear and convincing evidence that defendant is a sexually violent predator. We found that each element required by the statute had been satisfied. See *Commonwealth v. Krouse,* 799 A.2d 835, 837-38 (Pa. Super. 2002). Defendant now argues that we erred in accepting the opinion of the Sexual Offender Assessment Board representative because: (1) the expert's opinion was inadequately supported by necessary facts because no reasonable effort had been made to review defendant's history; (2) the expert did not review the trial testimony; (3) the expert transmuted the lack of evidence into evidence itself; and (4) the expert purported to rely on defendant's prior acquittal in another matter to support her opinion.

Paula Brust, the Sexual Offenders Assessment Board member who evaluated defendant, testified credibly at the hearing. Ms. Brust stated that, as part of the evaluation process:

"After we compile all our information, I go through all of the records that I have. And I make a determination based on the facts of the offense, past behaviors, et cetera, whether or not the offender meets the criteria for a sexually violent predator." (N.T., 04/19/06, p. 9.)

Ms. Brust stated that although sometimes she will interview the offender as part of her evaluation, "in this case, [defendant] was not participating in the assessment process." (N.T., 04/19/06, p. 9.) Accordingly, Ms. Brust performed her evaluation in this case by reviewing the factors set forth in 42 Pa.C.S. §9795.4, which must be considered when assessing a convicted sex offender for sexually violent predator status. These factors include: "multiple victim offense, excessive force, nature of sexual contact, relationship to victim, age of the victim, unusual cruelty during the commission of the offense, mental capacity of the victim, prior criminal record, and personal characteristics of the offender." 42 Pa.C.S. §9795.4(b). Ms. Brust evaluated defendant in light of the aforesaid factors and prepared a report detailing the results of her evaluation. (N.T., 04/19/06, p. 9.) In her report, Ms. Brust concluded that defendant met the criteria under the statute and determined that defendant was a sexually violent predator. (N.T., 04/19/06, pp. 10, 15.)

The definition of the term "sexually violent predator" can be readily broken down into two component parts. A sexually violent predator is a person who: "(1) has

been convicted of a sexually violent offense . . . and (2) is determined to be a sexually violent predator . . . due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9792; *Commonwealth v. Moody,* 843 A.2d 402, 409 (Pa. Super. 2004). Ms. Brust's conclusion that defendant was a sexually violent predator was based on her determinations that defendant "[met] the criteria for possessing a personality disorder and [met] the criteria for predatory behavior as defined by the statute." (N.T., 04/19/06, p. 10.)

The Act defines mental abnormality as: "a congenital or acquired condition of a person that predisposes that person to the commission of criminal sexual acts to a degree that makes that person a menace to the health and safety of other persons." 41 Pa.C.S. §9792.

In this case, Ms. Brust "determined that [defendant] met the criteria for a personality disorder NOS, which means not otherwise specified." (N.T., 04/19/06, p. 11.) Ms. Brust explained her diagnosis as follows:

"A person diagnosed with a personality disorder NOS typically exhibits characteristics of a mixed personality disorder, if you will, where he doesn't meet all the criteria for one specific personality disorder, or enough information might not be available to determine that he has a particular personality disorder.

"So the characteristics of the personality disorder NOS that [defendant] meets are; number one, failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest; number two, conning others for

personal profit or pleasure; number three, irritability/ aggressiveness as indicated by repeated assaults; number four, reckless disregard for the safety of others; number five, is interpersonally exploitative, which means he takes advantage of others to achieve his own ends; [and] number six, lacks empathy, is unwilling to recognize the feelings and needs of others." (N.T., 04/19/06, p. 11.)

It was Ms. Brust's testimony that "this diagnosis does predispose [defendant] toward committing certain offenses, and his disorder causes him to experience an internal drive toward repeating sexual crimes, while not being solely defined by such acts." (N.T., 04/19/06, pp. 11-12.)

Moreover, Ms. Brust concluded that defendant's behavior was predatory in nature. Ms. Brust stated:

"According to the statute, predatory is an act directed toward a stranger or a person with whom a relationship has been maintained, established or promoted or initiated, in whole or in part, in order to facilitate or support victimization.

"[Defendant's] actions were predatory in nature. He was only out of jail between two or three months when he started to sexually offend against a 5-year-old victim. His criminal activity has included assaultive offenses and now, most recently, his sexual offense.

"[Defendant] took advantage of the victim's age, size and her naiveté, exploiting her for his own sexual gratification. He was the in-house predator as he lived with the grandmother who was responsible for the caretaking of this victim. He waited for the grandmother to leave to assault the victim. He also went into the bathroom with

her while she was cleaning herself when previously she needed no help with this task.

"He callously raped and sexually assaulted this victim with no regard to her feelings, so he did not have the best interest of the child as his priority . . . His thoughts were planned. They showed intent. He made it seem like it was a game. He was playing with the victim in order to groom her in order to get her to go along with what he was doing, so he had clear planning and intent involved in planning the commission of his crime." (N.T., 04/19/06, pp. 12-13.)

In the pre-sentence investigation report prepared by the Monroe County Probation Department, there was mention that defendant was accused of a rape and acquitted of the charges following a jury trial in New York. When asked whether she was aware of that or had made any reference to that in her report, Ms. Brust responded: "I didn't have that particular information available. But what I did have was a report from the father that according to the police report the father stated he thought [defendant] had been in Rikers for a sexually related crime, although I didn't have that information in my report and I understand he was charged with sex offenses at that time." (N.T., 04/19/06, pp. 13-14.) Ms. Brust clarified that she wasn't aware of those circumstances at the time she made her report, so her report, as written, does not take that past incident into consideration. (N.T., 04/19/06, pp. 14, 30.)

During cross-examination by defense counsel, Ms. Brust testified that she did not have occasion to review any psychological evaluations that may have been made

of defendant either in the Monroe County Correctional Facility or any other facility in which he may have been incarcerated. (N.T., 04/19/06, pp. 16-17.) She further stated that she neither personally examined defendant, nor did she administer any psychological tests. (N.T., 04/19/06, p. 17.)

However, she was quick to point out that she asked to interview defendant, but he chose not to participate in an interview. (N.T., 04/19/06, p. 17.) Moreover, Ms. Brust clarified that the criminal history that she took into consideration was an attempted robbery in 2000, an assault with intent to cause physical harm charge, to which defendant pled guilty and received five years probation, a probation violation due to possession of marijuana, and an intent of fraud and criminal trespass conviction in 2003. (N.T., 04/19/06, p. 18.) Although Ms. Brust did not know the details of all of those offenses, she testified that she was able to gauge from the nature of the charges that they were either violent offenses or aggressive offenses against another person. (N.T., 04/19/06, pp. 20, 22.)

We are of the opinion that Ms. Brust performed a very thoughtful, thoroughly researched evaluation of defendant. Accordingly, we found that her expert opinion was adequately supported by necessary facts. We found that she made every reasonable effort to review defendant's history. It was defendant's permissible decision not to participate in an evaluation. However, the fact that he is now contesting that Ms. Brust was not fully apprised of his history, when he could have sufficiently provided her with said history, is incongruous. Moreover, we found

that the previous criminal convictions she relied upon to arrive at her conclusion were well within her purview to review. There is no indication that she relied on defendant's acquittal in the other rape case to support her opinion. In fact, she credibly testified that she was not even aware of that acquittal at the time she prepared her report. Likewise, Ms. Brust cannot be said to have "transmuted the lack of evidence into evidence itself." She relied on various information as she analyzed the relevant factors in order to arrive at her ultimate opinion.

Finally, with respect to defendant's argument that Ms. Brust's opinion was flawed because she "did not review the trial testimony," we disagree. Specifically, defense counsel asked Ms. Brust the following question: "If the account you give as the underlying facts of what the victim's account was, and if that account is somehow overstated, would that in any way affect your conclusion here today?" (N.T., 04/19/06, p. 26.) Defense counsel appeared to be insinuating that if Ms. Brust relied upon the conviction in this case, and did not consider the credibility of the child victim, her conclusion might be skewed. Defendant's argument is without merit. Defendant was found guilty after trial by a jury of his peers. The credibility of the witnesses at trial, the testimony rendered, and the weight to be apportioned to the various witnesses and/or testimony was not relevant to Ms. Brust's evaluation. It was sufficient to know that defendant was convicted of the various charges. Consequently, we find that defendant's argument in this regard is without merit.

We were satisfied with Ms. Brust's evaluation of defendant. We found that her assessment as well as her testimony at the hearing thoroughly detailed the "mental

abnormality or personality disorder that makes [defendant] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9792; *Commonwealth v. Moody,* 843 A.2d 402, 409 (Pa. Super. 2004). We found the evidence to be clear and convincing, and it is therefore our determination that defendant's sexually violent predator status was proper. Accordingly, we accepted the opinion of the Sexual Offender Assessment Board representative.

After reviewing a pre-sentence investigation report prepared by the Monroe County Probation Department, we sentenced defendant to undergo a period of incarceration in a state correctional institution of not less than eight years, with a maximum not to exceed 16 years. In his sixth and final argument on appeal, defendant contends that we erred in sentencing him in the aggravated range because no actual aggravating circumstances existed.

We are mindful that under Pennsylvania law, the court has discretion to determine whether aggravating circumstances exist. *Commonwealth v. Hoover,* 342 Pa. Super. 163, 492 A.2d 443 (1985). The Pennsylvania Superior Court has adopted a three-part analysis for reviewing aggravated sentences. See *Commonwealth v. Hoover,* 342 Pa. Super. 163, 166, 492 A.2d 443, 444 (1985), citing *Commonwealth v. Duffy,* 341 Pa. Super. 217, 491 A.2d 230 (1985). "First, a sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range." See *id.* "Second, the sentencing judge's statement of reasons on the record must reflect this consideration." *Id.* "Finally, the sentencing judge's decision regarding the aggravation of a sen-

tence will not be disturbed absent a manifest abuse of discretion." *Id.*

At the time of sentencing, we set forth the aggravating circumstances that led to our conclusion that defendant should be sentenced in the aggravated range. We found particularly troubling: "[that the victim] had significant emotional trauma. The grooming, the pillow over the face of the victim, the game . . ." (N.T., 04/19/06, p. 40.) Moreover, we stated:

"This child is forever, forever impacted by this event, by this crime, by this rape. And it's going to change her life significantly in how she trusts people and how she interacts with people, in her relationships with men. It may not do it today or tomorrow or five years from now, but it may do it sometime after that. That's the way this happens. . . .

"And the fact that she was entrusted to this household and that you, [defendant], came in there after being released from prison and took advantage of the fact that this young, innocent child was there and was naive and trusted you—and I understand what the grooming part of it means, that you became friendly enough with her that she did trust you—and it went on until this happened is just in my mind despicable and horrendous." (N.T., 04/19/06, pp. 38-39.)

Ultimately, the imposition of sentence by a trial court is highly discretionary and will not be disrupted absent the existence of a substantial issue. *Commonwealth v. Williams,* 386 Pa. Super. 322, 328, 562 A.2d 1385, 1388-89 (1989). We weighed any and all potential aggravating and mitigating factors and imposed a length of incar-

ceration that was in accordance with the sentencing guidelines. Moreover, because defendant's sentence was imposed following our receipt and review of a pre-sentence investigation report, there is a presumption that we were aware of relevant information regarding defendant's character and that we weighed those considerations along with potential mitigating statutory factors. *Commonwealth v. Cruz-Centeno,* 447 Pa. Super. 98, 118, 668 A.2d 536, 545-46 (1995), see also, 42 Pa.C.S. §9781(b).

In *Commonwealth v. Walls,* 846 A.2d 152, 157 (Pa. Super. 2004), our Superior Court declared that when imposing a sentence, the trial court must consider various factors, including "the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant," and that the sentencing court must impose a sentence that is appropriate in light of the individualized facts of the underlying incident. *Commonwealth v. Hanson,* 856 A.2d 1254, 1259 (Pa. Super. 2004), citing *id.* at 157. We thoroughly considered all relevant factors in imposing an aggravated range sentence and, for the foregoing reasons, we sentenced defendant as we did in the aggravated range and denied his motion for reconsideration of sentence. Our sentence falls squarely within the aggravated range of the sentencing guidelines established for the crimes committed and does not exceed the statutory prescriptions.