J. A17036/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       :            PENNSYLVANIA
               v.                 :
                                         :
SOPHA DOK,                           :            No. 1700 EDA 2018
                                         :
            Appellant            :


Appeal from the Judgment of Sentence May 4, 2018
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0008835-2016


BEFORE: PANELLA, P.J., OLSON, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED OCTOBER 21, 2019**

Sopha Dok appeals from the May 4, 2018 judgment of sentence entered

by the Court of Common Pleas of Montgomery County following his conviction

of rape of a child, statutory sexual assault, endangering the welfare of a child,

and corruption of a minor.[1] After careful review, we affirm.

The trial court set forth the following factual and procedural history:

> [The victim] was in elementary school, living with her
> mother, [J.S.], when [appellant] came to live with
> them. [Appellant] and [J.S.] went on to have two
> children together. The five of them lived as a family.
>
> The abuse began when [the victim] was a middle
> school student. It spanned years and resulted in a
> pregnancy when [the victim] was 13 years of age.
> [The victim] underwent an abortion in September of
> 2010, and until November 8, 2016, it remained a

---

[1] 18 Pa.C.S.A. §§ 3121(a)(2) and (c), 3122.1(a), 4304(a), and 6301(a)(1),
respectively.

secret that the pregnancy was the product of [appellant's] abuse. At that time, [the victim] revealed this secret to her mother. [J.S.] confronted [appellant] and went to [the] police to report the sexual abuse. An investigation ensued. [Appellant] was arrested and charged.

[Appellant] proceeded to a three-day jury trial on January 22, 2018, at which the following facts were developed. [The victim] credibly testified that around the time she was in middle school, when she was 11, 12, and 13, she was sexually abused by [appellant], her stepdad. [The victim] testified about the first time she was sexually abused by him. It was at night, while her two half-siblings were asleep and her mom was at work working the overnight shift. She recalled that she was downstairs on the living room couch, and although her memory of this first incident was dim, she remembered that [appellant] said something about his penis being referred to as a squid or octopus. She remembered being touched inappropriately, but she did not remember whether it was under or over her clothes.

[The victim] testified that the sexual abuse occurred over a long period of time. [Appellant] told [the victim] that what they were doing was a secret and that if the secret came out that her mom would be unable to care for her and her siblings by herself. [The victim] believed this to be true. When [appellant] would touch her over her clothes he would touch her breasts, her buttocks and her vagina. She specifically recalled a time that [appellant] would not let her go out with her friends unless she performed oral sex on him.

[The victim] testified about the time she was in middle school and had to have an abortion because of the sexual abuse. [The victim] explained that [appellant] had raped her, as he did on many occasions. The victim remembered this happened more than 10 times. [Appellant] never did anything to protect against pregnancy. [The victim] detailed for the jury how when she became pregnant in middle school at

about age 13, by him, he was the one who broke the news of the pregnancy to her mother. He told [the victim's] mother a fictitious story about some boy from Texas that [the victim] met on the playground and had sex with. [The victim's] mother was furious with her. [The victim] ultimately had an abortion to terminate the pregnancy.

From that time on, whenever [the victim] and her mother would have arguments, her mother would call her a "whore," and other similar names. These arguments lasted until November 8, 2016 when [the victim] finally told her mother what really happened.

Around the time she was pregnant, [the victim] confided in her best friend, [D.B.], who was also a 13-year-old middle schooler.

During her testimony, [the victim] credibly explained how all of these memories were difficult and painful to recall, and that a lot of it was blocked from her memory. She told the jury how it was difficult to be in court and testify.

She also described the circumstances that gave rise to her recantation letter, dated May 1, 2017. At the time she was living with her grandmother, who connected her with an attorney. [The victim's] grandmother had made it clear before [the victim] began to live with her that she was going to associate herself with [appellant] and possibly attempt to keep him out of trouble. This fact was very hurtful to [the victim] how her grandmother would not be there for her when she had been raped.

The letter began, "I [the victim] would like to recant and dismiss all information previously given to any authority figure . . . I would not like to proceed any further with this case, investigation. . . . . ." [The victim's] grandmother was present when [the victim] wrote the letter. Specifically, as to the word "recant[,"] [The victim's grandmother looked it up in the dictionary. [The victim] really did not know what

the word meant. She did not mean to use that to mean that what happened was not true.

Also to testify at trial was [J.S.], [the victim's] mother, who verified that cover-story that [appellant] told her about [the victim's] pregnancy, i.e., that [the victim] met a boy on the playground and that she brought him back to the house to have sex with him. It was a story that did not make sense to her. [J.S.] also testified about the argument [she] and [the victim] had that brought out the secret about the abuse.

Next to testify was [D.B.], [the victim's] best friend in middle school, [who] verified that [the victim] told her that it was [appellant] who got her pregnant when they were in eighth grade.

The defense called on [P.S.], grandmother to [appellant's] children, to testify as a character witness. Through cross-examination the defense strategy was to challenge [the victim's] credibility, and attempt to suggest that [the victim] made up these allegations. The defense pointed to the recantation letter and suggested that [the victim] made up the allegations because it was during an argument between her and her mother that they came out.

At the conclusion of the trial, [appellant] was convicted of the aforementioned charges.[2] He was sentenced on May 4, 2018 to an aggregate term of 10 to 20 years' imprisonment. A post-sentence motion was filed on May 11, 2018, which was never ruled on. On May 22, 2018, a notice of appeal was filed. A concise statement of errors complained of on appeal was ordered and after an extension was granted, [appellant complied.]

---

[2] The Commonwealth brought a total of 146 charges for various sexually based offenses against appellant. Of those charges, the jury convicted appellant of one count each of rape of a child, statutory sexual assault, endangering the welfare of a child, and corruption of a minor. The Commonwealth **nolle prossed** the remaining charges.

Trial court opinion, 11/15/18 at 1-5 (citations to the record and footnote omitted). The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

In its opinion, the trial court noted that appellant's notice of appeal was filed prematurely, as post-sentence motions were still pending before the trial court. (**See id.** at 5 n.1.) Indeed, in cases where a trial court denies an appellant's post-sentence motion while an appeal which originated from a premature notice of appeal is pending, this court will treat the premature notice of appeal "as having been filed after entry of [an] order denying post-sentence motions." **Commonwealth v. Ratushny**, 17 A.3d 1269, 1271 n.4 (Pa.Super. 2011); **see also** trial court opinion, 11/15/18 at 5 n.1.

Here, as noted by the trial court, appellant's post sentence motions were denied by operation on November 7, 2018, while the instant appeal was still pending before this court. Accordingly, despite the premature notice of appeal, this case is now properly before us, and we may review the merits.

Appellant raises the following two issues for our review:

1. Does [a]ppellant's conviction offend due process pursuant to the holding in **Commonwealth v. Devlin**, 333 A.2d 888 (Pa. 1975)[,] requiring the vacation of the judgment of [appellant's] sentence?

2. Was the evidence insufficient as a matter of law for the jury to convict [appellant] of Count 11 Rape of a Child (F1) 18 Pa.C.S.[A.] § 3121(a)(2) and (c)?

Appellant's brief at 2.

In his first issue on appeal, appellant contends that the trial court erred when it denied appellant's motion for judgment of acquittal on the grounds that the Commonwealth failed to amend the bills of information to reflect the dates of the offenses proven at trial, thereby violating his right to due process. (Appellant's brief at 21.) The Commonwealth argues that it "proved the dates of abuse with sufficient specificity to satisfy due process," and that appellant is not entitled to relief. (Commonwealth's brief at 7.)

As this court has previously noted, "[a] motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa.Super. 2014), *appeal denied*, 95 A.3d 276 (Pa. 2014), quoting *Commonwealth v. Foster*, 33 A.3d 632, 634-635 (Pa.Super. 2011).

In his argument, appellant relies upon our supreme court's decision in *Devlin*, *supra*. In *Devlin*, the Commonwealth charged the defendant with sodomy, alleging that the crime took place sometime between February of 1971 and April of 1972.[3] *Id.* at 889. The defendant was convicted of sodomy and our supreme court reversed the judgment of sentence, holding that the prospect of defending a "charge of conduct occurring anywhere within a

---

[3] The victim was a 22-year-old man with intellectual disabilities who had the mental capacity of a first or second grade child and the emotional capacity of an even younger child. *Id.* at 889.

fourteen-month period was . . . a fundamentally unfair burden." *Id.* at 891 (footnote omitted). The court recognized that while the Commonwealth established that the crime was committed within the statutory period of limitations, "the date of the commission of the offense must be 'fixed with reasonable certainty.'" *Id.* at 890, citing *Commonwealth v. Levy*, 23 A.2d 97 (Pa.Super. 1941). Accordingly, the court concluded that the Commonwealth's 14-month time frame for the commission of the crime failed to meet the "'sufficient particularity standard of *Levy*," and to "hold otherwise would violate the notions of fundamental fairness embedded in our legal process." *Id.* at 890-891.

As noted by the Commonwealth, however, this court has stated the following regarding *Devlin* claims involving child victims:

> We conclude that for purposes of a *Devlin* claim, the Commonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child. *See Commonwealth v. Fanelli*, [547 A.2d 1201, 1203 (Pa.Super. 1988) (*en banc*)]; *Commonwealth v. Niemitz*, [] 422 A.2d 1369 ([Pa.Super.] 1980). On the other hand, in order to ensure a fair trial for the defendant, the Commonwealth should conduct a thorough examination and come forward with any evidence which indicates when the alleged crime is most likely to have taken place.

*Commonwealth v. Groff*, 548 A.2d 1237, 1241 (Pa.Super. 1988). This court has stated that:

> "the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which

involve a continuous course of criminal conduct." ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 990 (Pa.Super. 2007) (quoting ***Commonwealth v. Groff***, [] 548 A.2d 1237, 1242 ([Pa.Super.] 1988)). This is especially true when the case involves sexual offenses against a child victim. ***Id.***

***Commonwealth v. Brooks***, 7 A.3d 852, 858 (Pa.Super. 2010), ***appeal denied***, 21 A.3d 1189 (Pa. 2011).

We have further stated that,

"due process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. [***Devlin***, 333 A.2d at 892.] . . . Permissible leeway regarding the date provided varies with, ***inter alia***, the nature of the crime and the rights of the accused. ***See*** Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

***Commonwealth v. Riggle***, 119 A.3d 1058, 1069-1070 (Pa.Super. 2015), quoting ***Commonwealth v. Koehler***, 914 A.2d 427, 436 (Pa.Super. 2006), ***appeal denied***, 961 A.2d 858 (Pa. 2008).

Here, the Commonwealth alleged that appellant committed the offenses for which he was charged "on or about Monday, January 1, 2007," which falls

within the statute of limitations.[4]  As noted by the trial court, "[t]he facts developed at trial put the abuse spanning from 2008 to 2010[.]" (Trial court opinion, 11/15/18 at 22.)  Accordingly, because this case involved a child victim where the precise dates of the offenses were not known, we find that pursuant to our case law, the Commonwealth met its burden in establishing the dates of the offenses.  We further find that appellant's due process rights were not violated, and his first issue is, therefore, without merit.

In his second issue, appellant argues that the Commonwealth failed to present sufficient evidence to warrant a conviction of rape of a child. Specifically, appellant avers that the Commonwealth failed to prove beyond a reasonable doubt that appellant engaged in either oral sex or vaginal intercourse with C.S. when she was 12 years of age or younger.  (Appellant's brief at 37.)  The Commonwealth contends that appellant waived this issue on appeal because he failed to include it in his Rule 1925(b) statement of errors complained of on appeal.  (Commonwealth's brief at 14-15.)  In his argument, appellant relies upon our supreme court's decision in **Commonwealth v. Silver**, 452 A.2d 1328, 1333 (Pa. 1982), in which our supreme court described Rule 1925(b)'s waiver provision as "clearly discretionary," stating that waiver

---

[4] The statute of limitations requires that prosecution for major sexual offenses commence within 12 years of the time the act is alleged to have been committed.  42 Pa.C.S.A. § 5552(b.1).  Moreover, the statute of limitations in cases in which sexually based offenses are alleged to have been committed against a minor is the date the minor reaches 50 years of age.  42 Pa.C.S.A. § 5552(c)(3).

is only properly invoked, "where . . . omission from a statement of issues raised on appeal defeats effective appellate review." (**See** appellant's reply brief at 9.)

Appellant's reliance on **Silver** is misplaced. The Pennsylvania Rules of Appellate Procedure state that issues not raised in a Rule 1925(b) statement are waived. Pa.R.A.P. 1925(b)(4)(vii). Indeed, our supreme court has also stated that, "[a]ny issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998); **see also Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005). Moreover, Pennsylvania courts have consistently held that for sufficiency of the evidence challenges, an appellant's Rule 1925(b) statement "needs to specify the element or elements upon which the evidence was insufficient." **Commonwealth v. Tyack**, 128 A.3d 254, 260 (Pa.Super. 2015), quoting **Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa.Super. 2008) (citation omitted). Failure to do so results in waiver of the issue on appeal. **Id.**

Here, appellant admits that he did not include a sufficiency of the evidence issue in his Rule 1925(b) statement. (Appellant's reply brief at 9.) Accordingly, appellant's sufficiency of the evidence issue is waived on appeal.

Judgment of sentence affirmed.

Panella, P.J. joins this Memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/21/19</u>